# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RICKY L. FREEDERS, | : | |
| Plaintiff, | : | Case No. 3:10cv0037 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE, | : | |
|    Commissioner of the Social | | |
|    Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Ricky L. Freeders brings this case *pro se*, challenging the Social Security Administration's denial of his applications for Supplemental Security Income ["SSI"] and Disability Insurance Benefits ["DIB"]. This Court has jurisdiction to review the administrative denial of Plaintiff's applications. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

(Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and awarding benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II. Background

### A. Procedural History

Plaintiff filed an application for DIB with a protective filing date of April 17, 2006, and an application for SSI with a protective filing date of March 29, 2006, asserting that he was under a "disability" within the meaning of the Social Security Act. (Tr. 13, 97-99, 100-104). He alleges that since January 27, 2005, he has suffered from vertigo. (Tr. 127).

Following initial administrative denials of his applications, Plaintiff received a hearing before Administrative Law Judge ["ALJ"] James I. K. Knapp. (Tr. 25-47). An attorney represented Plaintiff during the hearing.

After the administrative hearing, ALJ Knapp issued a written decision concluding that Plaintiff was not under a disability within the meaning of the Social Security Act, and that he consequently was not eligible to receive DIB or SSI. (Tr. 13-23). ALJ Knapp's written decision is at issue in the present case.

### B. Plaintiff and His Testimony

Plaintiff was 51 years old on the date of the ALJ's non-disability decision,

and thus was considered to be "closely approaching advanced age" for purposes of resolving his DIB and SSI applications. (Tr. 22). He has a 10th grade or "limited" education. (Tr. 132). His past jobs involved work as a truck driver. (Tr. 128).

Plaintiff testified during the administrative hearing that he stopped working due to dizzy spells. (Tr. 29-30). He had dizzy spells daily, sometimes twice a day, lasting five to 10 minutes each. (Tr. 31). He said that his medication did not prevent these daily spells. (Tr. 30-31). Plaintiff explained that he would sit or lie down until a spell was over. (Tr. 31). Plaintiff stated that bending over to pick something up might cause a dizzy spell. (Tr. 43-44).

Plaintiff also testified as to his depression. (Tr. 33). He did not like to leave the house and "might get a little nervous." (*Id.*)

As to his daily activities, Plaintiff testified that he drove every day, watched television, and did laundry. (Tr. 29). He prepared simple meals for himself or his daughter cooked for him. (Tr. 33). He napped for about one to two hours every day. (Tr. 34). Plaintiff believed that missing a nap might cause an extra episode of dizziness. (Tr. 34, 38).

  C. **Medical Evidence**

    *Treating physicians*

Plaintiff began treating with family physician Robert Kominiarek, D.O., in April 1999. (Tr. 217). In January 2005, Plaintiff complained of headaches, pressure around his face and ears, ringing in his ears, dizziness, and feeling that he was going to pass out. (Tr. 212).

On referral from Dr. Kominiarek, Plaintiff saw Ronald L. DeVore, M.D., an ENT specialist, for chronic dizziness in February 2005. (Tr. 182). Dr. DeVore ordered an ENG, which suggested a non-localizing peripheral vestibular lesion. (Tr. 196-202). When seeing Plaintiff at the end of that month, Dr. Devore diagnosed peripheral vertigo. (Tr. 181).

From March through May 2005, Plaintiff attended nine physical therapy sessions to deal with his vertigo. (Tr. 183, 187-88).

Plaintiff again saw Dr. Kominiarek in August 2006, due to hypertension. (Tr. 218-22, duplicate at Tr. 245-49). Dr. Kominiarek characterized Plaintiff's hypertension as "uncontrolled" and "complicated;" provided relevant medication samples and management tips; and advised Plaintiff to return in four weeks. (Tr. 222, 249). No significant opinions were recorded at Plaintiff's follow-up visit in October 2006. (*Id.*).

Plaintiff returned to Dr. Kominiarek on August 2, 2007. (Tr. 249-53). Aside from "worsening" hypertension (Tr. 249), his examination findings at that time

essentially were normal (Tr. 250-53), with a single notation that Plaintiff "states that he is unable to work due to severe vertigo." (Tr. 250). That same date, Dr. Kominiarek completed a form assessing Plaintiff's ability to work. (Tr. 240-41). Due to Plaintiff's vertigo, hypertension, obesity, anxiety and depression (Tr. 240), Dr. Kominiarek checked boxes opining that Plaintiff could stand/walk or sit for one hour out of eight, and could lift 10 pounds. (Tr. 241). Plaintiff was moderately limited in pushing/pulling, bending, reaching, handling, and performing repetitive foot movements. (*Id.*). Plaintiff was "not significantly limited" in his abilities to see, hear and speak. Dr. Kominiarek also checked a box indicating that Plaintiff's limitations were expected to last between nine and 11 months. (*Id.*).

Dr. Kominiarek also completed a mental functioning capacity assessment. (Tr. 243-44). He opined that Plaintiff would be moderately limited in a variety of work-related mental functions. (Tr. 243). Dr. Kominiarek again checked a box indicating that Plaintiff's limitations were expected to last between nine and 11 months. (Tr. 244).

In October 2007, Dr. Kominiarek added a diagnosis of neurotic depression. (Tr. 294-98). Plaintiff continued to treat with Dr. Kominiarek, with examination findings being essentially normal. (Tr. 253-74, 276-85). Dr. Kominiarek

5

consistently diagnosed hypertension, and inconsistently diagnosed depression and, on one occasion, anxiety. (*Id.*). He also provided pain medication injections. (*Id.*).

In December 2007, cardiologist James G. Laws, D.O., noted that Plaintiff complained of vertigo with no loss of consciousness, and he recommended further cardiac evaluation. (Tr. 289).

In April 2008, Plaintiff saw John D. Balazs, D.O., on referral from Dr. Kominiarek. Following examination, Dr. Balazs opined that Plaintiff's complaint of dizziness was probably vestibular degeneration and he recommended further testing. (Tr. 275).

*Examining physicians*

Consulting psychologist Mary Ann Jones, Ph.D., examined Plaintiff in September 2006, at the request of the Ohio Bureau of Disability Determination ["BDD"]. (Tr. 223-27). Dr. Jones diagnosed Plaintiff with "psychological factors affecting physical condition," generalized anxiety disorder, and dysthymic disorder, and assigned him a Global Assessment of Functioning ["GAF"] score of 55. (*Id.*). Dr. Jones opined that Plaintiff was moderately impaired in relating to others, and that he was not "appropriate for jobs requiring sustained public interaction" or sustained interaction with coworkers or supervisors. (*Id.*). She

6

also thought that Plaintiff had moderate impairments in his ability to understand, remember and follow instructions, but that he could comprehend and complete simple, routine tasks of daily living at home and in the community. (*Id.*). Dr. Jones indicated that Plaintiff had only mild limitations in his ability to maintain attention, concentration, persistence and pace. (*Id.*). She also felt that Plaintiff had moderate limitations in his ability to withstand the stress of daily work. (*Id.*).

### *Reviewing physicians*

In December 2006, state agency psychologist Michael Wagner, Ph.D., reviewed the medical evidence on behalf of the Ohio BDD. Dr. Wagner opined that Plaintiff had mild restrictions in his activities of daily living and moderate limitations in both his social functioning and his ability to maintain concentration, persistence or pace. (Tr. 166-79). He further opined that Plaintiff was capable of performing simple and routine work activity with few social demands. (Tr. 228-31).

In January 2007, state agency physician Maria Congbalay, M.D., reviewed the medical evidence on behalf of the Ohio BDD. (Tr. 232-39). According to Dr. Congbalay, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit and stand/walk each for about six hours out of eight; never climb ladders, ropes or scaffolds; and never be exposed to hazards in the workplace. (*Id.*).

## III. Administrative Review

### A. "Disability" Defined

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d); 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.*

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. ALJ Knapp's Decision

ALJ Knapp resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations. (*See* Tr. 14-15); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

---

[2] The remaining citations to the Regulations will identify the pertinent DIB Regulation with full knowledge of the corresponding SSI Regulation.

8

ALJ Knapp concluded at Step 1 of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity since January 27, 2005, his alleged disability onset date. (Tr. 16).

The ALJ found at Step 2 that Plaintiff's severe impairments include hypertension, dysthymia, and a generalized anxiety disorder. (Tr. 16).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Social Security Regulation's Listing of Impairments.[3] (Tr. 17).

At Step 4, the ALJ found that

> the claimant lacks the residual functional capacity to: (1) lift more than 25 pounds frequently or 50 pounds occasionally; (2) climb ladders or scaffolds or do any job requiring good ability to maintain balance; (3) work at unprotected heights or around moving machinery; (4) have greater than occasional contact with the public; (5) follow complex instructions; or (6) do other than low stress work activity (i.e., no job involving fixed production quotas, or otherwise involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Tr. 18). The ALJ also found at Step 4 that Plaintiff was unable to perform his past relevant work as a truck driver. (Tr. 21). At Step 5, the ALJ concluded that Plaintiff could perform a significant number of jobs available in the national

---

[3]The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

9

economy. (Tr. 22).

The ALJ's findings throughout his sequential evaluation led him ultimately to conclude that Plaintiff was not under a disability and therefore was not eligible for DIB or SSI. (Tr. 13-23).

## IV. Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.     **Discussion**

In his *pro se* statement of errors, Plaintiff states that he began to have dizzy spells in November 2004 and continued to work until he was fired in January 2005. (Doc. #11 at 2-3). Plaintiff disagrees with the ALJ's purported statement that Plaintiff "had been doing nothing to cure my disability." (*Id.* at 4). He argues that his medications should have taken care of his vertigo and that emergency room visits for each blackout would have been unwarranted because "nothing . . . can be done." (*Id.*).

Because Plaintiff is proceeding *pro se* and does not identify any specific

11

errors within the ALJ decision currently before the Court, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings.

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a non-examining medical advisor, a one-time examining physician or psychologist, or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544. A treating physician's opinion is given controlling weight, however, only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *See id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight generally is given to the opinions of

12

examining medical sources than to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). Yet the opinions of non-examining state agency medical consultants have some value, and under some circumstances can be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as those of treating physicians, including supportability, consistency and specialization. *See* 20 C.F.R. § 416.972(d), (f); *see also* Ruling 96-6p at **2-3.

The ALJ holds the responsibility for weighing the record evidence – including medical source opinions – and determining whether Plaintiff was under a "disability." *See* 20 U.S.C. § 404.1527(e). The decision in Plaintiff's case reveals that the ALJ weighed the medical source opinions and other evidence of record under the required legal criteria and reasonably concluded that Plaintiff was not under a "disability" as defined by the Social Security Act. For example, the ALJ considered and rejected Dr. Kominiarek's opinions – the medical source opinions most favorable to Plaintiff – because he found that Dr. Kominiarek did

13

not support those opinions with objective medical evidence and because the record lacked other evidence corroborating Dr. Kominiarek's conclusions. *See* 20 C.F.R. § 404.1527(d)(2)-(4). The ALJ found that Dr. Kominiarek did not provide reliable medical support for his extreme conclusions, a finding that was reasonable considering that Dr. Kominiarek merely listed Plaintiff's underlying diagnoses when asked to provide medical support for his recommended restrictions, and did not provide any specific or notable clinical findings to support his opinion that Plaintiff was limited to sedentary work. (Tr. 240-41). As a review of the record confirms that Dr. Kominiarek did not explain his opinions in any meaningful detail, that review also confirms the reasonableness of the ALJ's decision. Given the lack of explanation or documentation of medical evidence in support Dr. Kominiarek's opinion, the ALJ was entitled to discount or reject Dr. Kominiarek's opinions. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *see also Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because [the treating physician] failed to identify objective medical findings to support his opinion [on a questionnaire] regarding Price's

impairments, the ALJ did not err in discounting his opinion.").

Here, not only did Dr. Kominiarek fail to provide objective medical support for his conclusion that Plaintiff could perform only sedentary work, but his assessment to that effect also was at odds with the more favorable descriptions of Plaintiff's medical condition set forth in his own treatment notes. (*See* Tr. 222, Tr. 249-74, 276-85). Moreover, the ALJ further considered Plaintiff's treatment history, noting the lack of evidence of frequent emergency room visits for acute headaches or other symptoms associated with extreme hypertension. (*See* Tr. 21). Plaintiff's lack of significant treatment during that time was a proper consideration under the Regulations relative to evaluating Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(v), (vi) (treatment and other measures to relieve symptoms considered in evaluating credibility); *see also* Social Security Ruling 96-7p, 1996 WL 374186 (claimant is less credible if level of treatment is inconsistent with level of complaints).

Finally, the ALJ also noted that even if Plaintiff were limited to the extent suggested in Dr. Kominiarek's August 2007 basic medical evaluation, Dr. Kominiarek expressly acknowledged that the limitations he suggested in that assessment were expected to last only nine to 11 months. (Tr. 21; *see* Tr. 241). Because an impairment must be expected to last for a continuous period of at

15

least 12 months in order to be considered disabling, the ALJ correctly declined to find Plaintiff to be disabled based upon Dr. Kominiarek's opinion that he would be unemployable for less than the requisite period of time. (Tr. 21); *see* 20 C.F.R. § 404.1505(a). Substantial evidence thus supports the ALJ's reasons for discounting Dr. Kominiarek's opinions, as well as his conclusion that the evidence did not support a finding of disability.

**IT THEREFORE IS RECOMMENDED THAT:**

1. The Commissioner's final non-disability decision be AFFIRMED; and

2. The case be TERMINATED on the docket of this Court.

January 5, 2011

                                                      s/Sharon L. Ovington
                                                       Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981).